IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington Field Office 131 M Street, N.E., Ste. 4NW02F Washington, D.C. 20507 | ) ) ) ) ) ) | Civil Action No. |
| Plaintiff, | ) ) ) | COMPLAINT |
| v. | ) ) | |
| WAL-MART STORES EAST, LP, 99 H Street, N.W. Washington, D.C. 20001 | ) ) ) ) ) | JURY TRIAL DEMAND |
| Defendant. | ) ) ) | |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended (the "ADA"), and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Troy Miles ("Miles") and Tonya Bland ("Bland"), both of whom were adversely affected by such practices. As alleged with greater particularity in the Statement of Claims below, Defendant violated the ADA by subjecting Miles and Bland, who are deaf, to disability discrimination when it failed to provide them with effective reasonable accommodations throughout their employment at Store Number 5941 in Washington, D.C. As a result of Defendant's failure to provide reasonable accommodations, Miles and Bland were denied equal benefits and privileges of employment.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. §12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Columbia.

## PARTIES

3.      Plaintiff, the U.S. Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4.      At all relevant times, Wal-Mart Stores East, LP ("Defendant"), has continuously been doing business in Washington, D.C., and has continuously had at least 15 employees.

5.      At all relevant times, Wal-Mart Stores East, LP, has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701 (b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g), and (h).

6.      At all relevant times, Wal-Mart Stores East, LP, has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

### A.    Troy Miles

7.      More than thirty days prior to the institution of this lawsuit, Troy Miles filed a charge of discrimination with the Commission alleging, among other things, violations of the ADA by Defendant.

8.      On September 12, 2017, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Defendant had violated the ADA by failing to provide reasonable accommodations to Miles, and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9.      After issuing to Defendant the Letter of Determination, the EEOC engaged in communications with Defendant to provide it the opportunity to remedy the unlawful employment practices described in the Letter.

10.      On December 15, 2017, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

11.      All conditions precedent to the institution of this lawsuit have been fulfilled.

**B.      Tonya Bland**

12.      More than thirty days prior to the institution of this lawsuit, Tanya Bland filed a charge of discrimination with the Commission alleging violations of the ADA by Defendant.

13.      On September 12, 2017, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Defendant had violated the ADA by failing to provide reasonable accommodations to Bland, and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

14.     After issuing to Defendant the Letter of Determination, the EEOC engaged in communications with Defendant to provide it the opportunity to remedy the unlawful employment practices described in the Letter.

15.     On December 21, 2017, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

16.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

### A.  Troy Miles

17.     Troy Miles has moderate to severe hearing loss in his right ear and profound hearing loss in his left ear.

18.     At all times relevant to this action, Defendant was aware that Miles is deaf.

19.     Miles is substantially limited in major life activities, including but not limited to, hearing and communication that is dependent on hearing.

20.     Miles' primary language is American Sign Language ("ASL").

21.     When he cannot use ASL, Miles uses Total Communication for one-on-one conversations, which means that he uses his voice and English Sign Language simultaneously. Total Communication is effective when the situation allows him to lip-read in an accurate and comprehensive manner.

22.     Miles can effectively understand speech through lip reading only in limited circumstances, such as a quiet setting with a speaker who is close to him, is speaking slowly and clearly, and is still. Miles is not able to lip read effectively in a group setting, especially if his sight line is impaired, the speaker is moving around, and/or there are multiple speakers and group

discussion.

23.     As set forth below, at all times relevant to this action, Miles was a qualified individual with a disability within the meaning of the ADA.

24.     In or about February 2014, Miles began working as an Overnight Associate at a Wal-Mart store in Sugarland, Texas.

25.     In or around June 2014, Miles transferred from the Sugarland store to Defendant's Store Number 5941, located in Washington, D.C., where he began working as a Sales Associate.

26.     Wal-Mart twice promoted Miles at Store Number 5941, first, in approximately October 2014, to Merchandise Supervisor for the Frozen Food Department, and then, in approximately December 2015, to the position of Department Manager (then the revised title for a Merchandise Supervisor) for the Candy Department. Although the title of the position changed, the positions were the same. Both positions were hourly supervisory positions assigned to a specific department in the store.

27.     Miles held the Position of Department Manager for the Candy Department until approximately June 2017, when he transferred to a Wal-Mart store in Ohio. As a Department Manager for the Candy Department at Store Number 5941, Miles worked in relative isolation, except for a two-month period after which the one Sales Associate in his department was fired. Defendant did not assign any additional Sales Associates to work in Miles' department, and, as described below, did not provide him with an ASL interpreter so that he could participate in staff meetings.

28.     At all times relevant to this lawsuit, the essential functions of Defendant's hourly Department Manager position (previously called the Merchandise Supervisor position) involved overseeing the day-to-day operations of an assigned department, including by maintaining up-to-

date merchandise displays, which change frequently; ordering and tracking inventory; ensuring

that accurate and current pricing is employed; ensuring that the department is maintained and run

according to Defendant's policies and procedures; and supervising any Sales Associates assigned

to the department.  As a Merchandise Supervisor and then a Department Manager, Miles could

perform the essential functions of his position, including but not limited to those delineated

above, with or without reasonable accommodations.

29.     Throughout Miles' employment as a Merchandise Supervisor and a Department

Manager at Store Number 5941, employees in his position were required to attend regularly

occurring and/or prescheduled staff meetings, during which job duties, performance

expectations, company policies and procedures, and benefits and privileges of employment were

discussed. These meetings included, but are not limited to:

   a) Meetings for Merchandise Supervisors and Department Managers that could occur
      as often as every day and frequently occurred several times a week; lasted on
      average 30-45 minutes; were led by the Store Manager, Assistant Managers,
      Department Managers, and visitors from the corporate office; and covered
      Defendant's expectations, feedback, and procedures for a variety of workplace
      issues, such as displaying merchandise, tracking and maintaining inventory, and
      pricing; and

   b) All-employee meetings and trainings that could occur as often as every day and
      frequently occurred several times a week; lasted on average 25 minutes; and
      included presentations by the Store Manager, Assistant Managers, Department
      Managers, and Human Resources staff about workplace policies, including but not
      limited to, those related to displaying and pricing merchandise, policy changes, pay,
      uniforms, and other personnel issues.

30.     In addition to the staff meetings described in paragraph 29, Miles participated in

numerous small group meetings with his supervisors and/or human resources professionals about

important personnel matters, including but not limited to his complaint of disability harassment

and being physically threatened by a Sales Associate, and his requests for reasonable

accommodations.

6

31.    Defendant was on notice of Miles' need for reasonable accommodations to understand and participate in meetings, yet it failed to provide effective accommodations for Miles, including, but not limited to, as follows:

a) In October 2014, after receiving a promotion to Merchandise Supervisor, Miles approached his first-level supervisor, Assistant Manager Jason Bailey, and Human Resources Manager Darby Nelson, to tell them that he needed an interpreter to be able to understand what was said at the supervisors' staff meetings. Nelson responded that Wal-Mart does not provide interpreters.

b) Instead of providing Miles with access to a sign language interpreter for the supervisors' staff meetings, Bailey assigned another Department Manager to take notes for Miles. The notes were not consistently provided; nor were they comprehensive. Miles repeatedly complained to Bailey about the inadequacy of the notes, including by showing him the notes a number of times. Despite being on notice that the co-worker's notes were not an effective accommodation, Defendant did not improve the quality and dependability of the notes.

c) In addition to making requests to Assistant Manager Bailey and Human Resources Manager Nelson for access to an interpreter, Miles also informed Human Resources Personnel Coordinator Chanel Hughes of his need for an interpreter in or about October 2014 when he became a Merchandise Supervisor. She was not responsive to his requests.

d) On several occasions, and as early as October 2014 and continuing thereafter, Miles informed Store Manager Eric Quist, the highest-level manager at Store Number 5941, that because of his deafness, he could not understand everything that Quist said at staff meetings. Rather than facilitating Miles' requests for ASL interpreting, Quist merely told Miles that he was a good worker and that he could rely on his first-level manager (Bailey) to assist him.

e) In or about January 2015, a Sales Associate made derogatory gestures to Miles and mocked his disability by shouting Miles' name very loudly to see if Miles could hear him, and when Miles turned around to see who shouted, the Sales Associate turned his back and pretended that he had done nothing. When Miles approached the Sales Associate to inform him, by voicing and using sign language, that his conduct was disrespectful, the Sales Associate threatened him. When Miles reported the incident, Store Manager Quist convened a small group meeting in which he told both Miles and the Sales Associate that they were fired but then rescinded the terminations. Quist did not provide Miles with access to an ASL interpreter for these discussions, in which multiple people were talking at the same time, and as a result, Miles did not understand everything that was said and was not able to fully participate in the discussion or defend himself.

f) On or about June 2, 2016, after Defendant had received Miles' EEOC Charge, Store Manager Quist and Market Human Resources Manager John Hulme, a corporate-level official, met with Miles to discuss his accommodation requests. Miles told Hulme that he needed an interpreter because he could only understand approximately 30 percent of what was said in group meetings, and that the notes he was given were not effective because he needed a notetaker to sit next to him and provide simultaneous, comprehensive notes on a consistent basis. After this meeting, Defendant notified Miles in writing that "you will be provided an interpreter for large meetings or training. You will also be provided a written copy of meeting notes." Miles then worked at Store Number 5941 for another year and continued to be denied the ASL interpreting and the comprehensive notetaking he had been promised.

32. Since at least June 2014, Defendant engaged in unlawful employment practices in violation of Section 102(a) and (b)(5)(A) of Title I of the ADA, 42 U.S.C. §§ 12112(a) and (b)(5)(A), by failing to provide Miles with reasonable accommodations, so that he could understand and participate in  meetings, including but not limited to meetings for Department Managers, all-employee meetings that included presentations by the Store Manager, Assistant Managers, Department Managers, and Human Resources staff, small group meetings to discuss personnel matters, and for other important workplace communications, and so that he could enjoy the equal benefits and privileges of his employment. Accommodations requested by Miles that Defendant denied to him included access to ASL interpreting and consistent and comprehensive note-taking.

33. The effect of the practices complained of in paragraph 32 has been to deprive Miles of equal employment opportunities and otherwise adversely affect his rights under the ADA resulting in emotional pain, suffering, inconvenience, mental anguish, frustration, humiliation, loss of enjoyment of life, and the opportunity to enjoy the benefits and privileges of employment, including but not limited to, receiving employer information and participating in meetings.

34. The unlawful employment practices complained of herein were intentional.

35.     The unlawful employment practices complained of herein were done with malice or with reckless indifference to the federally protected rights of Miles.

**B.     Tonya Bland**

36.     Tonya Bland is profoundly deaf.

37.     Bland's primary language is American Sign Language ("ASL").

38.     Bland is substantially limited in major life activities, including but not limited to, hearing and speech.

39.     At all times relevant to this action, Defendant was aware that Bland is deaf.

40.     From approximately September 2013 through March 2016, and then in August 2016, Bland worked at Defendant's Store 5941 as an Overnight Stocker.

41.     At all times relevant to this action, Bland was a qualified individual with a disability.

42.     Wal-Mart recognized Bland's job performance as an Overnight Stocker with a certificate of good work on at least four occasions.

43.     At all times relevant to this lawsuit, the essential functions of the Overnight Stocker position involved maintaining a department in accordance with company policies and procedures, including by arranging, organizing, and cleaning merchandise displays; receiving, stocking, and rotating merchandise; identifying and removing damaged and out-of-date goods; signing and pricing merchandise appropriately; following company safety, cleaning, and operating procedures; and utilizing equipment appropriately. As an Overnight Stocker, Bland could perform the essential functions of her position, including but not limited to those delineated above, with or without reasonable accommodations.

44.     At all times relevant to this lawsuit, Overnight Stockers were required to attend regularly occurring and/or prescheduled meetings, some of which included video presentations, during which job duties, performance expectations, company policies and procedures, and benefits and privileges of employment were discussed.  These meetings included, but are not limited to:

   a)  New-employee orientation and training to discuss policies that address, among other things, job responsibilities, benefits, and workplace injury;

   b)  Daily group meetings held to discuss shift duties, rules, and updates to existing policies, and performance feedback;

   c)  Large group meetings to discuss personnel issues such as safety, discipline, and employee benefits;

   d)  Performance meetings or reviews; and

   e)  One-on-one meetings with human resources and management related to personnel matters.

45.     From the outset of her employment with Defendant, Bland repeatedly made it known to management that, without reasonable accommodations, she could not understand the information presented at the meetings and trainings she was required to attend.

46.     Despite being on notice of Bland's need for reasonable accommodations to understand and participate in meetings and trainings, Defendant failed to provide effective accommodations to Bland, including, but not limited to, as follows:

   a)  Management ignored Bland's numerous requests for an ASL interpreter for new employee orientation, which consisted largely of spoken lecture-style presentations and question-and-answer sessions.

   b)  Bland was required to watch training videos without closed-captioning at large group meetings. She was not provided an interpreter for group meetings, and when she requested closed captioning for the videos, management informed her that closed captioning was not available on the store's television.

   c)  Bland attended a safety training that instructed what to do in the event of an

active shooter. The training included a video. Bland was not provided with an interpreter or a closed-captioned video for this training.

d)  Bland attended frequent mandatory group meetings that addressed personnel issues. Despite numerous requests, she was not provided with an interpreter or other effective accommodation for these meetings. Bland informed management that she did not want to attend group meetings without an interpreter because she did not understand the presentations. Human Resources told Bland that she had to sit at the meetings regardless.

e)  Bland suffered a work-related injury and was not provided with an interpreter or other effective accommodation for meetings and communications with Human Resources and management related to workers' compensation reporting and benefits. While this information was covered during orientation, it was not conveyed to Bland. She was eventually forced to bring a friend to work to translate her communications with Human Resources about the workers' compensation issue.

47.    Since at least September 2013, Defendant engaged in unlawful employment practices in violation of Section 102(a) and (b)(5)(A) of Title I of the ADA, 42 U.S.C. §§ 12112(a) and (b)(5)(A), by failing to provide Bland with reasonable accommodations so that she could understand and participate in meetings and trainings, including but not limited to, new employee orientation and training, daily group meetings held to discuss shift duties and communicate other workplace information, large group meetings, and one-on-one meetings related to personnel matters and Bland's workplace injury, and so that she could enjoy the equal benefits and privileges of her employment. Accommodations requested by Bland that were denied to her included access to ASL interpreting and closed-captioning for video presentations.

48.    The effect of the practices complained of in paragraph 47 has been to deprive Bland of equal employment opportunities and otherwise adversely affect her rights under the ADA resulting in emotional pain, suffering, inconvenience, mental anguish, frustration, humiliation, loss of enjoyment of life, and the opportunity to enjoy the benefits and privileges of

employment, including but not limited to, receiving employer information and participating in meetings.

49.    The unlawful employment practices complained of herein were intentional.

50.    The unlawful employment practices complained of herein were done with malice or with reckless indifference to the federally protected rights of Bland.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from refusing to reasonably accommodate any individual with a disability and from engaging in any employment practice which discriminates on the basis of a disability.

B.    Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for individuals with disabilities and which eradicate the effects of its past and present unlawful employment practices.

C.    Order Defendant to implement non-discriminatory objectives, written policies and practices regarding the terms and conditions of employment and sign and conspicuously post, for a designated period of time, a notice to all employees that sets forth the remedial action required by the Court and informs all employees that Defendant will not discriminate against any employee because of a disability, including that it will comply with all aspects of the ADA.

D.    Order Defendant to make whole Miles and Bland by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices complained of herein, including emotional pain, suffering, inconvenience, mental anguish,

embarrassment, frustration, humiliation, and loss of enjoyment of life, in amounts to be determined

at trial.

       E.      Order Defendant to pay Miles and Bland punitive damages for its malicious and

reckless conduct described herein, in amounts to be determined at trial.

       F.      Grant such further relief as the Court deems necessary and proper.

       G.      Award the Commission its costs of this action.

**JURY TRIAL DEMAND**

The Commission requests a jury trial on all questions of fact raised by its Complaint.


                               Respectfully submitted,


                               JAMES L. LEE
                               Acting General Counsel


                               GWENDOLYN YOUNG REAMS
                               Associate General Counsel


                               DEBRA M. LAWRENCE
                               Regional Attorney

                               s/ Maria Luisa Morocco
                               MARIA LUISA MOROCCO
                               Supervisory Trial Attorney
                               DC 489956


                               s/ Ashley M. Martin
                               ASHLEY M. MARTIN
                               Trial Attorney (Detailed)
                               EQUAL EMPLOYMENT
                               OPPORTUNITY COMMISSION
                               Washington Field Office
                               131 M St., NE
                               Suite 4NW02F

Washington, DC 20507
Phone: (202) 419-0749
Fax:     (202) 653-6053
Ashley.Martin@eeoc.gov
PA 313607


s/ Tanisha R. Wilburn
TANISHA R. WILBURN
Trial Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Washington Field Office
131 M St., NE
Suite 4NW02F
Washington, DC 20507
Phone: (202) 419-0712
Fax:     (202) 653-6053
Tanisha.Wilburn@eeoc.gov
MD 19271

ATTORNEYS FOR PLAINTIFF


Dated:          November 30, 2018